Robert W. SHAUGHNESSEY, Appellant in No. 71–1313, and James E. Moore, Jr.,

v.

PENN CENTRAL TRANSPORTATION COMPANY.

Appeal of James E. MOORE, Jr., in No. 71–1314.

Nos. 71–1313, 71–1314.

United States Court of Appeals, Third Circuit.

Submitted Dec. 1, 1971.

Decided Jan. 17, 1972.

Thomas P. Shearer, Pittsburgh, Pa. (Alan R. Krier, Altoona, Pa., on the brief), for appellants.

Hermon M. Wells, Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, and KALODNER and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

This is an appeal from an order of the district court granting defendant's motion for summary judgment and dismissing plaintiffs' cause of action.

The complaint in this case alleges that both plaintiffs, Moore and Shaughnessey, had at one time worked as chemists in the Altoona Test Department of defendant Penn Central Transportation Company ("the Company"). Moore was hired on April 18, 1955, and Shaughnessey began work on May 2, 1955.[1] Effec-tive August 13, 1965, the Company abolished Moore's position. Likewise, as of January 3, 1966, it abolished Shaughnessey's position also. Both men had worked as non-agreement employees, i. e., non-union and without individual employment contracts.

On February 1, 1968, the merger between Penn Central and the New York Central Railroad became effective. Thereafter, on February 26, a letter was posted to each of the Company's then current non-union employees advising them that pursuant to the merger the Company had agreed to provide its nonagreement employees with the same rights and privileges secured for its union employees by the May 20, 1964 collective bargaining agreement then in effect. By order of the I. C. C. this extension in the coverage of the 1964 agreement had been made prerequisite to Commission approval of the merger. *See* 327 I.C.C. 552.

It is plaintiffs' contention that, despite the Company's election to abolish their positions, they remain non-agreement "employees" of Penn Central within the meaning of the I. C. C. order. By this action they seek a court order requiring the Company to afford them "the benefits of the Agreement of May 20, 1964 . . . ." or, alternatively, a judgment against Penn Central "in an appropriate monetary sum." After answering plaintiffs' complaint the Company moved for a summary judgment, setting forth by means of several affidavits and a memorandum what it considered to be the controlling considerations of the court's decision. Ultimately, "for the four reasons set forth . . . ." in the Company's memorandum, the court granted the motion for a summary judgment and ordered dismissal of plaintiffs' cause of action. Plaintiffs appeal that order.

To obtain a summary judgment the defendant had to demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, to-

---

1. Plaintiffs allege that Shaughnessey was "hired" on April 15, 1955, but did not report for work until May 2 because he was on active duty with the Navy.

gether with . . . affidavits, if any, show[ed] that there [was] no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); see Kress, Dunlap & Lane, Ltd. v. Downing, 286 F.2d 212, 214–215 (3d Cir. 1960); Fairbanks, Morse & Co. v. Consolidated Fisheries Co., 190 F.2d 817, 824 (3d Cir. 1951). See also Poller v. Columbia Brdcstg. Sys., Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). This could be alternatively established by evidence indicating either that there was no issue of material fact presented or that although such an issue might exist resolution of that issue favorably to the plaintiff would not control the court's decision. Cf. Neff v. World Pub. Co., 349 F.2d 235, 239 (8th Cir. 1965). See generally 35B C.J.S. Federal Civil Procedure § 1142(b). By the memorandum accompanying its motion for summary judgment the defendant asserted that: (1) plaintiffs' claim, to the extent it requested damages, was barred by the applicable statute of limitations; (2) the plaintiffs' allegations did not establish them as employees of the Company after their positions were abolished; (3) the I. C. C. order had not applied to plaintiffs even assuming that they were, in fact, "furloughed" employees; and (4) plaintiffs had not been affected by the merger and, therefore, were not covered by the terms of the merger agreement concerning non-agreement employees. To dispose of this appeal we must consider each of these alternative grounds separately.

■ We do not agree that plaintiffs' cause of action, at least in part, is barred by the controlling statute of limitations. The statutory provision cited by defendant is § 16(3)(f) of Title 49. This section provides that a complaint seeking enforcement of an I. C. C. order for the payment of money must be filed within one year from the effective date of that order. The order which plain-

tiffs here seek to have enforced, however, is not per se such an order. Compare Missouri Pac. Rr. Co. v. Austin, 292 F.2d 415, 417 n. 1 (5th Cir. 1961). See also Wisconsin Bridge & Iron Co. v. Illinois Terminal Co., 88 F.2d 459, 461–462 (7th Cir. 1937).

■ Secondly, the Company contends that summary judgment is appropriate since, assuming the truth of plaintiffs' allegations, their complaint does not allege facts sufficient to establish plaintiffs as "employees" of defendant at the time the I. C. C. order issued. Specifically, it is urged that a "written contract or [a] contract of employment for a definite term" must be alleged to sustain the plaintiffs' action. We do not believe that such an allegation is necessary given the assertion that a custom or practice existed under which the particular employer furloughed employees when a reduction of work force was necessitated. Compare N. L. R. B. v. Atkinson Dredging Co., 329 F.2d 158, 162 (4th Cir. 1964); Marlin-Rockwell Corp. v. N. L. R. B., 116 F.2d 586, 588 (2d Cir. 1941).[2]

■ Defendant's third alternative ground is that the I. C. C. order did not apply to furloughed employees, regardless of whether such a status could be sustained by the plaintiffs. We think this issue should be resolved on a complete record and not on the conflicting affidavits now on file. It is apparent that the order was meant to include defendant's employees at least "to the extent contemplated by § 5(2)(f) of the [Interstate Commerce] Act," 49 U.S.C. § 5(2)(f). And as noted by the Supreme Court: "[W]here the term 'employee' has been used in statutes without particularized definition it has not been treated by the courts as a word of definite content." See United States v. American Trucking Ass'n., 310 U.S. 534, 545–546 n. 29, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). Nor are we willing to conclude

2. The Supreme Court has observed that "[s]eniority arises only out of contract or statute." Trailmobile Co. v. Whirls, 331 U.S. 40, 53 n. 21, 67 S.Ct. 982, 988, 91 L.Ed. 1328 (1947). However, we do not construe this as being restricted to written contracts only.

that plaintiffs were not affected by the merger within the meaning of the I. C. C. order. *Compare* Brogan v. Pennsylvania Rr. Co., 211 F.Supp. 881 (N.D.Ill. 1962).

From our review of the pleadings, exhibits and affidavits filed in this case we cannot sustain the district court's conclusion that as a matter of law there was presented "no genuine issue as to any material fact." We think the claim, no matter how tenuous in defendant's view, must be resolved after trial.

The order of the district court granting defendant's motion for summary judgment and dismissing plaintiffs' cause of action will be reversed and the case remanded for further proceedings consistent with this opinion.