**Julian STROTHER, Jr., Executor of the Estate of Julian Strother, Sr., Plaintiff,**

v.

**GREAT NOTCH CORPORATION et al., Defendants.**

**Civ. A. No. 429–71.**

United States District Court, D. New Jersey.

Oct. 25, 1972.

Victor Shorr, Clifton, N. J. (Martin L. Kaplan, Orange, N. J., on the brief), for plaintiff.

Clapp & Eisenberg by Alfred C. Clapp, Newark, N. J., for defendants.

## MEMORANDUM OPINION AND ORDER

LACEY, District Judge:

Defendants move for summary judgment.[1] Plaintiff's decedent (Strother) lodges this action under § 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa), claiming violations of § 10(b) of the 1934 Act (15 U.S.C. § 78j) and Rule 10b–5 (17 C.F.R. § 240.-10b–5) of the General Rules and Regulations under that Act.[2] There are three transactions at issue:

1. Strother's sale of 72 shares of Franklin Contracting Company

[1] Those defendants not moving are McDonald, who is deceased; Fox; Wilkinson; and Ernst & Ernst. This matter was argued before the late Honorable Robert Shaw. Counsel agreed to have the matter decided by me on the pleadings, briefs, depositions, affidavits, and transcript of oral argument before Judge Shaw.

[2] 15 U.S.C. § 78aa provides:

The district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 225 and 347 of Title 28. No costs shall be assessed for or against the Commission in any proceeding under this chapter brought by or against it in the Supreme Court or such other courts. 15 U.S.C. § 78j provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(Franklin) stock in 1964, 1965, and 1966 to Franklin stockholders, pursuant to certain Buy-Sell Agreements.[3]

2. Sale by Strother's Estate of 257 Shares of Franklin stock in 1967 to Franklin (and allocated by it to its stockholder-employees) pursuant to the aforesaid agreements.

3. Strother's sale of 100 shares of Great Notch Corporation (Great Notch) in 1964 to the closely affiliated Franklin.

Strother had been employed by Franklin from 1916 to 1964. As a so-called key-man, he, along with others, signed in 1955 an Insurance Trust Agreement, amended in 1962. The agreement's purpose was to permit key employees to hold Franklin stock, to be repurchased by the company on the death of the employee. Sec. 5 of the Amended Agreement established a formula under which the price of the repurchased shares was to be determined. These agreements are the so-called Buy-Sell Agreements.

As to transactions 1 and 2, *supra,* the parties are in agreement that the sale was at a price fixed by formula in Sec. 5 of the Amended Agreement. Defendants quite properly ask, if stock is sold pursuant to the terms of, and at a formula price fixed by, a 1955–1962 agreement to which the seller was a party, how can there be a cause of action under Rule 10b–5 because of alleged non-disclosures and misrepresentations as to its value made in 1964–1967?

Plaintiff does not deny that the sales were required by the agreements. Plaintiff contends, nonetheless, that at the time of the sales (1964 through 1967), and as an inducement to the sales, certain of the defendants made misrepresentations violative of Rule 10b–5. Additionally, in his brief in opposition to this motion, plaintiff contends that the prices of the sales involved were "far below" and "well below" those established by the agreement.

Unfortunately for plaintiff, his allegations of misrepresentation as set forth in his unverified complaint, and the aforesaid claim that the prices of the sales were well under the formula prices, are not entitled to consideration on this motion for the reason that they are not supported by any facts in affidavit form.

By way of example, plaintiff's reference to lower-than-formula sales prices

(a) To effect a short sale, or to use or employ any stop-loss order in connection with the purchase or sale, of any security registered on a national securities exchange, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b–5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

3. The Insurance Trust Agreements are attached to the Complaint as Exhibits A and B. The fact of their existence is not in dispute, nor is the meaning of their terms. More specifically, plaintiff does not contend that the formula to arrive at price is inapplicable, or that it was erroneously calculated.

in his brief in opposition to the motion, is simply statement of counsel. It is effectively answered by the affidavit of Norman M. Abel, Franklin's Vice President and General Manager, which demonstrated how the formula prices were arrived at and which established beyond doubt that the prices paid were formula prices.

The remaining materials before me on this motion, defendants' supporting affidavits and depositions taken of defendants by plaintiff, disclose no misrepresentations whatever in the years 1964–1967 in connection with the sales of Franklin stock. Plaintiff, on the other hand, has submitted no affidavits in opposition to the motion, leaving standing unrefuted all of defendants' sworn denials of wrongdoing.

I have pointed out that plaintiff cannot complain he was deprived of information peculiarly within defendants' knowledge. I have read with care the depositions taken by plaintiff's attorney of defendants Crabiel, Schroder, and Abel. Not once was plaintiff's counsel obstructed by objection from opposing counsel as to any question put. He was left free to develop each and every detail of the transactions in suit had he chosen to do so. Yet the deposition testimony, when all is said and done, supports completely the grounds upon which this motion is made. I return therefore to the simple and stark proposition, if plaintiff has any facts to support his allegations, he has failed to disclose them.

Transaction 3 involves the sale by Strother to Franklin of 100 shares of Great Notch stock. Plaintiff's complaint alleges that these shares were delivered to defendant Crabiel for $35 a share when the "true value" was $600 a share and that he, acting for himself and others, led Strother to make the sale by certain false and misleading representations (Cplt. para. 7), in violation of Sec. 10b of the Securities Exchange Act of 1934 and Rule 10b–5(2).

Defendants' motion, as to this transaction, relies upon the affidavit of the defendant Crabiel and his letter of April 16, 1964, to Strother. As has been stated earlier herein, plaintiff's counsel has taken Crabiel's deposition. The testimony therein refutes absolutely the complaint's allegations of fraud or misrepresentation.

The letter of April 16, 1964, provides in part:

. . . We, furthermore, will agree to purchase your one hundred (100) shares of Great Notch Corporation common stock which you hold at the same price as was paid Mr. Schroder and Mrs. McDonald for their shares. This price was at the rate of $35 per share and we would suggest a transfer of that stock on May 1, at which time you deliver us the stock certificates, a check in the amount of $3,500 will be available.

Defendants also have supplied on this motion an affidavit of Mr. Schroder, formerly Vice President of Great Notch and Franklin, who accepted $35 per share because he thought it was a good price.

The two affidavits dispel any notion of fraud or misrepresentation. Yet, as has been noted, plaintiff has failed by depositions taken by his counsel, and by affidavit to show any facts which would enable this Court to find a dispute as to material facts. We are left with only plaintiff's conclusory allegations. This is not enough to defeat the motion.[4]

4. More specifically, the complaint (paras. 7 and 8) charges that defendant Crabiel practiced his alleged deception by means of the mails and reference is made to the letter of April 16, 1964. It is charged that Strother was misled by the letter into believing that the value of the stock was $35 per share. Yet the letter makes no representations as to value other than that the price paid would be the same as

Further insight into plaintiff's position in this suit and on this motion is to be gained from the transcript of argument before Judge Shaw on April 10, 1972. Acknowledging in essence the lack of facts at this time, and pressed by Judge Shaw as to this, plaintiff's counsel said (pp. 6–8):

Mr. Shorr: We intend to determine by the testimony of certain accountants and other experts as to the precise formula used, and as to the value of the stock, and I believe that—

The Court: A short answer is you don't know?

Mr. Shorr: Your Honor, we are at a disadvantage in this case. We have to develop part of this case at the time of trial. There are genuine issues.

The Court: If you don't know what your case is about before you go to trial you probably won't get to trial.

Mr. Shorr: Your Honor, we respectfully ask that this Court look at this case on the basis that we have developed certain facts from the testimony of the defendants in this case and in order to do that we have to have this matter heard by a jury.

The Court: You can take depositions.

Mr. Shorr: We did, your Honor. We have taken depositions. We have received answers to interrogatories, but it is most difficult to obtain certain information in this case without the matter being heard in this courtroom and let a jury decide whether or not there is any factual issue to decide, your Honor.

The Court: I want to tell you a few things about the ground rules. I am not going to have a jury trial for weeks and months while you try to find out whether you have got a case.

Mr. Shorr: Your Honor, we earnestly and honestly and sincerely believe that we do have a case, your Honor, and if we are allowed to proceed with our case with our experts, and after the plaintiff has put in his case if at that point Mr. Clapp wants to make a motion to the Court and your Honor at that time feels that we don't have a case and you dismiss it at that point I would say, "All the equities in the world were satisfied," but to dismiss this case at this point on summary judgment motion without giving the opportunity to the plaintiff to present his case at this point—

Thereafter, a pre-trial conference herein was conducted by Judge Shaw on May 4, 1972. Judge Shaw deferred a ruling on the then pending motion of defendants for summary judgment because, as the pre-trial order provides:

It is represented to the Court by counsel for plaintiff that there may be a need for further discovery. In the light of this representation it is not considered appropriate to rule on the pending motion for summary judgment at this time. The motion will be continued on the calendar until all discovery on plaintiff's end has been completed with leave to plaintiff, if desired, to supplement memorandum heretofore filed to the extent that supplementing thereof becomes appropriate by reason of further facts brought to light on continuance of discovery. The period of time within which plaintiff may complete discovery is extended to May 15, 1972. It is represented by counsel for plaintiff that the further discovery desired is examination of certain records of defendants which counsel for defendants represent will remain available to plaintiff prior to May 15, 1972. Further discovery by plaintiff beyond that

that paid to Mr. Schroder and Mrs. McDonald. Certainly this is no fraud, when we have also included the Schroeder

affidavit to which reference has hereinabove been made.

date as to books and records will not be permitted except upon further leave of Court for good cause shown consisting of circumstances beyond plaintiff's control.

The pre-trial order further required that plaintiff's counsel notify the court no later than May 16, 1972 whether counsel was going to supplement its earlier memorandum on this motion.

Defendant's counsel, by letter of May 17, 1972, notified Judge Shaw that plaintiff's counsel had not taken any more discovery and had not submitted any further memoranda. The records of this Court also indicate no request for further discovery, and reflect no specification of what facts, now within plaintiff's knowledge and which would defeat defendants' motion, are presently unavailable even for presentation in affidavit form.

F.R.Civ.P. 56(e) and (f) provide:

(e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

(f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

■ To obtain a summary judgment the defendants must demonstrate that the pleadings, depositions, and the affidavits show that there is no genuine issue as to any material fact. Shaughnessey v. Penn Central Transportation Company, 454 F.2d 1223 (3d Cir. 1972); Kress, Dunlap & Lane, Ltd. v. Downing, 286 F.2d 212, 214–215 (3d Cir. 1960); Fairbanks, Morse & Co. v. Consolidated Fisheries Co., 190 F.2d 817, 824 (3d Cir. 1951).

Reference has hereinabove been made to subdivision (e) of F.R.Civ.P. 56. The Advisory Committee Notes on the 1963 amendment to Rule 56 indicate that "The last two sentences [of subdivision (e)] are added to overcome a line of cases, chiefly in the Third Circuit, which has impaired the utility of the summary judgment device. . . . Third Circuit cases have taken the view that summary judgment must be denied, at least if the averments are 'well-pleaded,' and not supposititious, conclusory, or ultimate. . . ." The Notes also embody a criticism of this former Third Circuit doctrine as expounded in 6 Moore's Federal Practice 2069 (2d ed. 1953) and 3 Barron & Holtzoff, Federal Practice and Procedure (Wright ed. 1958), § 1235.1.

■ Accordingly, it can now be said that when a movant comes forward with facts showing that his adversary's case is without merit, the party against whom the motion is made cannot simply rest upon the allegations of the complaint but in turn must adduce factual

material "which raises a substantial question of the veracity or completeness of the movant's showing or presents countervailing facts." Beal v. Lindsay, 468 F.2d 287, p. 291 (2d Cir. 1972).

In Donnelly v. Guion, 467 F.2d 290 (2d Cir. 1972), the party in opposition to the motion for summary judgment had supplied an affidavit which the court held presented no facts to contest on the material issue, those presented by the affidavits of the movant. In upholding a determination of the trial judge that summary judgment should be granted, the Court of Appeals stated 293:

> If this case had proceeded to trial and nothing remained in the case but Mrs. Donnelly's vague and conclusory allegations, unsupported by evidence, it is clear that a directed verdict would have been appropriate. If, indeed, evidence was available to underpin her conclusory statement, Rule 56 required her to come forward with it. A party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial, for in doing so he risks the possibility that there will be no trial. A summary judgment motion is intended to "smoke out" the facts so that the judge can decide if anything remains to be tried. *See* Applegate v. Top Associates, Inc., 425 F.2d 92 (2d Cir. 1970); Dressler v. MV Sandpiper, 331 F.2d 130 (2d Cir. 1964); Radio City Music Hall Corp., *supra* [Radio City Music Hall Corp. v. United States, 135 F.2d 715 (2d Cir. 1943)]; 6 Moore, Federal Practice ¶56.11[3] at 2171–75. Cases such as Empire Electronics Co. v. United States, 311 F.2d 175 (2d Cir. 1962) and Cali v. Eastern Airlines, Inc., 442 F.2d 65 (2d Cir. 1971) are cited to us by the appellant but they are clearly distinguishable. These cases properly held that although there may be no dispute as to the basic evidentiary facts, summary judgment is improper where the case

stand or falls on the inference that may be drawn from these facts—particularly where the inferences depend upon subjective feelings and intent. But this rule applies only where the "undisputed evidentiary facts disclose competing material inferences as to which reasonable minds might disagree." 442 F.2d at 71. In the absence of medical or other evidence to contradict Dr. McDonald's statements, we believe that reasonable minds could not conclude that Dr. McDonald's determination that the cause of death was obscure was wanton and wilful. Accordingly, the affidavits revealed no genuine issue as to any material fact. [footnote omitted]

*See generally* Barron & Holtzoff, *supra*, § 1231 et seq.

Strikingly apposite to the matter at bar is Robin Construction Company v. United States, 345 F.2d 610 (3d Cir. 1965). In upholding a summary judgment entered at the trial level in favor of a defendant, the Court of Appeals stated (354 F.2d at 613–614):

> The purpose of summary judgment would be defeated if a party who has obtained by discovery and from affidavits information which he should seek to amplify or test by further discovery, merely rests on a statement of ignorance of the facts. Indeed, subdivision (f) of Rule 56, by affording an opportunity for continuance of an application for summary judgment so as to permit affidavits to be obtained or depositions to be taken or discovery to be had, indicates that absent such effort it is idle to attempt to shrug off the facts which his adversary has presented. As has often been pointed out, one who resists summary judgment but does not contradict the operative facts in his adversary's affidavit must utilize discovery, and suspicion alone without discovery is not enough. See Schneider v. McKesson & Robbins, Incorporated, 254 F.2d 827 (2 Cir. 1958). It is true that Rule 56(f) also

authorizes the court in appropriate cases to refuse to enter summary judgment where the party opposing the motion shows a legitimate basis for his inability to present by affidavit the facts essential to justify his opposition; but to take advantage of this provision he must state by affidavit the reasons for his inability to do so and these reasons must be genuine and convincing to the court rather than merely colorable. It is not enough to rest upon the uncertainty which broods over all human affairs or to pose philosophic doubts regarding the conclusiveness of evidentiary facts. In the world of speculation such doubts have an honored place, but in the daily affairs of mankind and the intensely practical business of litigation they are put aside as conjectural. . . .

Writing for the court, the late Judge Freedman noted that the "line of decisions" of the Third Circuit, which had once allowed a party in opposition to a motion for summary judgment to raise an issue by averments in his pleading alone, had been overruled by the 1963 amendments to Rule 56, particularly by subdivision (e) of that Rule.

Judge Freedman then went on to find that the opposing affidavit did not raise any genuine factual issue and that therefore, there remaining only a matter of law to be resolved, summary judgment was properly granted.

The plaintiff in the case at bar hardly can contend at this stage of the proceedings that he has not had ample opportunity to present whatever facts may be available to him which would stand in opposition to those tendered under oath by the defendants. Moreover, the plaintiff at this stage of these proceedings cannot plead lack of opportunity to present such facts as he may have nor may he be heard to say that he had not had sufficient and striking warning of Rule 56 and its sanctions being imposed upon him in view of his lack of adequate response to the motion and its supporting papers. As has hereinabove been noted, Judge Shaw at the pre-trial conference last spring reserved additional time for the plaintiff to pursue further discovery and to submit appropriate materials in opposition to the motion. Yet nothing was done. Plaintiff has not even seen fit to take advantage of the "safety valve" of subdivision (f) which enables one to present by affidavits "reasons . . . [why he cannot present by affidavit] facts essential to justify his opposition . . . [to the motion]." Accordingly for the reasons stated, defendants' motion for summary judgment is granted, and it is so ordered and adjudged, with costs.

In view of the disposition made herein of defendants' motion, it is unnecessary to decide the other matters raised by the defendants in their moving papers.

Since there are multiple defendants, and the motions were made by less than all, it is directed, pursuant to F.R.Civ.P. 54(b), that final judgment be entered as to all of the moving parties, it being expressly determined that there is no just reason for delay.