**STATES STEAMSHIP COMPANY,**
Plaintiff,

v.

**STONE MANGANESE MARINE,**
**LTD., et al., Defendants.**

**AMERICAN SMELTING & REFINING**
**CO., Defendant, Third-Party**
Plaintiff,

v.

**AVONDALE SHIPYARDS, INC.,**
**Third-Party Defendant.**

Civ. A. No. 432–72.

United States District Court,
D. New Jersey.

Dec. 27, 1973.

Carpenter, Bennett & Morrissey, by David M. McCann, Newark, N. J., for plaintiff, States Steamship.

Stryker, Tams & Dill, by Walter F. Waldau, Newark, N. J., for defendant, Stone Manganese.

Pitney, Hardin & Kipp, by Richard L. Plotkin, Newark, N. J., for American Smelting, defendant-third party plaintiff.

Schumann, Hession, Kennelly & Dorment by Alan H. Kress, Jersey City, N. J., for third party defendant, Avondale Shipyards.

## OPINION

LACEY, District Judge.

This is a motion for summary judgment pursuant to Rule 56(c), Fed.R. Civ.P., by defendant American Smelting and Refining Company (Asarco), a New Jersey corporation, against plaintiff States Steamship Company (States), a Nevada corporation. Asarco asserts there is no dispute as to any material fact and that it is entitled to a judgment dismissing States' claims against it, as a matter of law. After considering the affidavits and briefs submitted by both parties, and having heard oral argument, I find Asarco's motion must be denied. I must emphasize, however, that this denial is made in light of the facts as they have been presented herein to date.

Plaintiff herein seeks a recovery in excess of $2.8 million for damages allegedly suffered as a result of the purchase of seven allegedly defective propellers, cast by third-party defendant, Avondale Shipyards, Inc. (Avondale), from an alloy, Superston, supplied to Avondale by Asarco. In its action, jurisdiction of which is based on diversity of citizenship, 28 U.S.C. Section 1332, plaintiff seeks to recover damages not only from Asarco, but from Stone Manganese Marine, Ltd. (Stone), Stone Platt Industries, Ltd. (Stone Platt), Stone Platt Overseas, Ltd. (Stone Platt Overseas) and Superston Corporation (collectively, the Stone Companies) as well. Liability as to Asarco is alleged on theories of negligence, strict liability in tort, breach of implied warranties and breach of express warranty, founded upon a claim that the alloy as produced by Asarco was defective insofar as its use in propellers was concerned. Crossclaims for contribution and indemnification were filed by and between the Stone Companies and Asarco.

The facts giving rise to this action are both complex and disputed in many material respects. On May 20, 1966, States entered into a contract with third-party defendant Avondale and the United States Government. The agreement provided that Avondale would construct five ships (and the propellers for them) in accordance with plans already

drawn for States by George C. Sharp Company.

Prior to January 1966 it was decided that the ships' propellers were to be made of Nialite, a material somewhat different from the Superston alloy eventually used. Defendants claim the decision to change to Superston was made by Sharp, on advice of the Columbian Bronze Corporation, in January 1966. It appears, however, the orders were not given to Avondale before October 1966.

The Superston material was cast into ingots by Asarco at its Houston, Texas, plant (although plaintiff claims it was likely that ingots used in the one spare propeller cast in New Jersey by Ferguson Propeller and Reconditioning, Ltd., were made in Asarco's New Jersey plant). The Houston ingots were delivered F.O.B. New Orleans, to Avondale, and there cast into propellers which were installed on the constructed vessels.

Plaintiff and the moving defendant are in dispute as to where delivery of the ships and spare propellers took place, defendant designating California, plaintiff contending for New Orleans, at various times between September 1968 and August 1969. Defendants also claim that the two ships first experiencing propeller difficulties were "launched" from California.

Problems with the propellers apparently began on the high seas in March of 1969. The Montana, one of the five ships constructed by Avondale with propellers of Superston, while en route from Japan to Korea, suffered fractures in several propeller blades. Not only were the propellers themselves damaged but the main stern tube bearings were damaged, as well. Asarco claims the latter damage was minor; States, of course, disagrees.

On March 23, 1969, thirteen days after the Montana mishap, another of the five Avondale-built and States-owned vessels, the Colorado, also sustained a broken propeller while at sea in the Far East. Damage to the main stern tube bearings and the tail shaft is again claimed to have resulted from the failure; and the parties are once again at odds as to the seriousness of this damage.

Both damaged vessels were repaired in Asian ports and returned to California. Meanwhile the Superston propellers on the three remaining Avondale-built ships were removed by States and stored with the spare propellers after the American Bureau of Shipping declared all of the Superston propellers "unacceptable for use on a vessel classed with the Bureau." [Affidavit of J. W. Dickover, Paragraph 6(a)–(f).]

Superston, the allegedly defective alloy that is said to have caused the propeller failures, was first developed by Stone, a subsidiary of Stone Platt, a British corporation. Rights to Superston were licensed to Superston Corporation, a New Jersey corporation owned and controlled by Stone Manganese. Superston Corporation, in turn, granted licenses to manufacture the alloy to Asarco and to Avondale to fabricate it.

As noted above, there is a dispute as to when the decision to use Superston was made. The 10-month disparity between the date proffered by Asarco and that tendered by States derives significance from plaintiff's assertion that its personnel had seen Asarco brochures on Superston prior to the supposed October decision date, but only after the January 1966 decision date defendants urge. Prior to this time, States claims, it was only generally aware that Asarco marketed Superston to the industry. Asarco contradicts States by asserting that prior to 1971 States had not known that Asarco supplied any ingots whatsoever.

Asarco claims States "discovered" its connection with the propellers while conducting discovery in a suit brought by States against Avondale in September 1969 in the United States District Court for the District of Columbia. In this action States alleged that Avondale had breached its contract and warranties and was "grossly negligent" in the construction of the propellers here in question. The suit was settled by the parties and

dismissed with prejudice, by stipulation, on February 18, 1972. Asarco was not a party to these proceedings.

Before I deal with Asarco's motion for dismissal on the merits, it is appropriate to review the principles that guide this court on motions for summary judgment. Rule 56(c) of the Federal Rules of Civil Procedure sets forth the prerequisites for the granting of a motion for summary judgment:

> The judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Thus, the burden upon the movant is not an easy one and the court will not lightly deprive a party of its right to a trial on disputed material factual issues. As the Third Circuit Court of Appeals has noted:

> . . . On a motion for summary judgment the court must take the view of the evidence most favorable to the party against whom the motion is directed, giving to that party the benefit of all favorable inferences that might reasonably be drawn from the evidence, thereby placing the burden of proving the absence of any factual issue on the movant.

Janek v. Celebreeze, 336 F.2d 828, 834 (3d Cir. 1964). *See also* Adickes v. Kress & Co., 398 U.S. 144, 147, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Friedman v. Meyers, 482 F.2d 435 (2d Cir. 1973); Benton-Volvo-Metairie, Inc. v. Volvo Southwest, Inc., 479 F.2d 135 (5th Cir. 1973); Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141 (3d Cir. 1972); Shaughnessey v. Penn Central Trans. Co., 454 F.2d 1223 (3d Cir. 1972).

In light of the foregoing requirements, the warnings found in Doehler Metal Furniture Co. v. United States, 149 F.2d 130, 135 (2d Cir. 1945) deserve special mention. The Court there stated:

> We take this occasion to suggest that trial judges should exercise great care in granting motions for summary judgment. A litigant has a right to a trial where there is the slightest doubt as to the facts . . . Such a judgment, wisely used, is a praiseworthy, time-saving device. But although prompt dispatch of judicial business is a virtue, it is neither the sole nor the primary purpose for which courts have been established. Denial of a trial on disputed facts is worse than delay.

Summary judgment, then, may only be granted in cases where movant is clearly entitled to judgment as a matter of law and there is not the slightest possibility of a material factual dispute. Asarco's case falls far short of this standard.

■ In this diversity action, this court must apply the substantive law of New Jersey, the forum State. Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including its choice of law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The current New Jersey approach to choice of law problems was espoused by Justice Mountain in Rose v. Port of New York Authority, 61 N.J. 129, 139–140, 293 A. 2d 371, 376 (1972). He stated:

> . . . (W)e have departed from this traditional conflict of laws rule that automatically chooses the law of the place of the wrong, the *lex loci delicti*, and have adopted, as has New York, the more flexible doctrine that applies the law of that jurisdiction having the most significant relationship and closest contacts with the occurrence and the parties. Pfau v. Trent Aluminum Co., 55 N.J. 511, 263 A.2d 129 (1970); Mellk v. Sarahson, 49 N.J. 226, 229 A.2d 625 (1967); Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963) . . .

Thus it would ordinarily be necessary for this court to anticipate which of the many jurisdictions having contacts with the manufacture and use of the propellers the New Jersey courts would deem to have the most significant relationship to the wrongs here alleged.

Asarco strongly urges that this *Erie*-fettered court must select the substantive law of either California or Texas as the operative law under the Rose v. Port of New York Authority test. States, however, asserts that New Jersey has the most significant relationship with occurrences here at issue and that therefore this court need not attempt to predict what foreign law would be applied by a New Jersey court under *Erie*. Moreover, plaintiff contends, other locales, namely Louisiana (where Asarco's ingots passed to Avondale) and maritime jurisdiction, have a greater relationship to the occurrences than does either California or Texas and thus deserve priority of consideration over these latter jurisdictions.

For purposes of this motion, however, it is unnecessary to decide which jurisdiction a New Jersey state court would find embodies the most significant relationships for conflicts purposes. Defendant Asarco is clearly not entitled to summary judgment under New Jersey law, or even under the law of California or Texas, the jurisdictions whose law defendant so strongly urges this court to apply.

Asarco first urges that plaintiff's losses as a result of the propeller failures were only "economic losses," that is, "commercial losses caused by an ineffective product." (Defendant's brief, p. 12.) Economic loss in this context is marked by the loss of the benefit of the bargain for the goods purchased, lost profits, and replacement costs for ineffective goods. Physical damage to property and personal injury, however, are not considered to be "economic loss."

■ Asarco correctly asserts that purely economic losses, as distinct from damages for injury to property or person, cannot be recovered in actions brought under the theory of strict liability in tort in either Texas or California. Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965); Anthony v. Kelsey-Hayes Co., 25 Cal.App. 3d 442, 102 Cal.Rptr. 113 (1972); Eli Lilly & Co. v. Casey, 472 S.W.2d 598 (Tex.Civ.App.1971); Thermal Supply of Texas, Inc. v. Asel, 468 S.W.2d 927 (Tex.Civ.App.1971); Melody Home Manufacturing Co. v. Morrison, 455 S. W.2d 825, 826 (Tex.Civ.App.1970). As movant also recognizes, this distinction does not exist in New Jersey. Santor v. A & M Karaghuesian, Inc., 44 N.J. 52, 207 A.2d 305 (1964).

But the line between economic loss and recoverable property damage is not always easy to draw. *See* Note, Economic Loss in Products Liability Jurisprudence, 66 Colum.L.Rev. 917 (1966). Plaintiff not only claims loss of the bargain and replacement costs for the defective propellers, but also alleges loss resulting from allegedly extensive damage to other parts of the two ships disabled at sea (the Montana and Colorado). The magnitude of this non-propeller damage is, as I have already indicated, keenly disputed. Plaintiff's description of the Montana and Colorado propeller deterioration while underway at sea approaches if it does not cross the threshold of "physical harm" deemed recoverable in strict liability in Texas and California. As to the other propellers, although it is beyond doubt that the loss of their use and the benefit of the bargain thereon constitute purely "economic loss," it would be untimely on this motion to apportion the two types of damage, especially in view of possible recovery of all damages by plaintiff under a theory of express warranty.

The courts of both Texas and California permit recovery in tort for the type of physical harm alleged to have befallen plaintiff. In Gherna v. Ford Motor Co., 246 Cal.App.2d 639, 55 Cal.Rptr. 94 (1966), recovery was permitted in tort for damage to an automobile gutted by fire as a result of a defective component part. No distinction was made between

physical harm to the product itself and harm caused to "other" property. Moreover, in Seely v. White Motor Co., *supra,* upon which defendant relies, recovery in strict liability was denied plaintiff for physical damages to a truck allegedly built with a defect only because plaintiff failed to show the defect caused the damage. *See* Annot. 16 A.L.R.3d 683. *See also* Kriegler v. Eichler Homes, Inc., 269 Cal.App.2d 224, 74 Cal.Rptr. 749 (1969) (recovery in strict liability for defective construction of home upheld).

■ Asarco cites Fentress v. Van Etta Motors, 157 Cal.App.Supp.2d 863, 323 P.2d 227 (1958), which does stand for the proposition that internal injury, not caused by collision with an external object, is not recoverable in tort. However, in view of *Gherna* and *Seely,* and the disapproval of *Fentress* and its requirements, in the context of residential construction, *See* Sabella v. Wisler, 59 Cal.2d 21, 27 Cal.Rptr. 689, 377 P.2d 889 (1965), its present viability is at best doubtful. Moreover, Anthony v. Kelsey-Hayes Co., *supra,* also cited by Asarco in support of its economic loss argument, distinguishes damage arising out of loss of business use and loss of bargain from recoverable "ponderable physical property damage to the property sold and purchased." 102 Cal.Rptr. at 116. Plaintiff has at least raised a factual issue as to the existence and the extent of such ponderable damage in this case.

Just as the California courts did in *Gherna,* the Texas Court of Civil Appeals in Ford Motor Co. v. Grimes, 408 S.W.2d 313 (Tex.Civ.App.1966), upheld product liability recovery without a showing of negligence for fire damage caused to an automobile by a defective component. Moreover, in Melody Home Mfg. Co. v. Morrison, 455 S.W.2d 825, 828 (Tex.Civ.App.1970), physical damage to a trailer resulting from defective components in the trailer itself was found sufficient, if proven, to uphold recovery on a strict liability theory. The case at bar, and *Melody Home,* are distinguishable from Eli Lilly & Co. v. Casey, *supra,* and Thermal Supply of Texas,

Inc. v. Asel, *supra,* where commercial damages resulted from a mere non-violent failure of the products therein to operate.

Asarco also raises the economic loss-physical harm distinction under the negligence claim against it. This distinction does exist under California law, Anthony v. Kelsey-Hayes Co., *supra,* 102 Cal.Rptr. at 915–916. However, its application to the instant facts is subject to the analysis hereinabove set forth in connection with the strict liability claim. *See* Gherna v. Ford Motor Co., *supra.*

Movant also contends there can be no recovery in strict liability in that Section 402A(1)(b), Restatement of Torts 2d, requires that the product sold must be "expected to and does reach the user or consumer without substantial change in the condition in which it is sold." The ingots sold by it, Asarco points out, were cast into propellers by Avondale, an operation which Asarco argues resulted in a substantial change in the original product.

■■ This "substantial change" argument is too simplistic a reading of Section 402A(1)(b). A change in the shape of the product, however noticeable, is not dispositive of the "change" issue. As the court found in Sharp v. Chrysler Corp., 432 S.W.2d 131, 136 (Tex.Civ.App.1968): "The rule is that if the manufacturer or assembler surrenders possession and control of a product in which change will occur, or in which the change can be anticipated to occur *so as to cause a product failure . . . .* " recovery cannot be had (emphasis supplied). *Accord,* Mazzi v. Greenlee Tool Co., 320 F.2d 821 (2d Cir. 1963); Dennis v. Ford Motor Co., 332 F.Supp. 901, 903 (W.D.Pa.1971), aff'd, 471 F.2d 733 (3d Cir. 1973). Moreover, whether the requisite change is present is an issue ordinarily left for determination by the fact finder, Finnegan v. Havir Mfg. Co., 60 N.J. 413, 209 A.2d 286 (1972), especially in a case such as this where the qualities of the alloy, regardless of its shape, are apparently under attack.

■ Asarco also attacks plaintiff's implied warranty of fitness theory. It reasserts the uncontested fact that there is no privity of contract between it and plaintiff and notes "it is settled law in California that privity between the parties is a necessary element to recovery on a breach of an implied warranty of fitness." Anthony v. Kelsey-Hayes Co., *supra,* 102 Cal.Rptr. at 116. What may be settled law in California, however, is far from settled in Texas. Several cases hail the end of the privity requirement in implied warrant of fitness cases. Olsen v. Royal Metals Corp., 392 F.2d 116, 118 (5th Cir. 1968); Ford Motor Co. v. Lemieux Lumber Co., 418 S.W.2d 909 (Tex.Civ.App.1967). Others insist privity still stands as an obstacle. Eli Lilly & Co. v. Casey, *supra.* In the absence of a resolution of the conflict by the Texas Supreme Court, and in light of the recent trend towards the diminution of the privity requirement generally, this court is reluctant to dismiss plaintiff's claim of an implied warranty at this time, on this incomplete factual record.

Asarco finally claims that States' claims brought under implied warranty and strict liability theories could be dismissed, as a matter of law, because there can be no recovery by a user against a supplier of a mere component part. For this proposition Asarco cites Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81 (1963), where the New York Court of Appeals denied recovery to an airline passenger on an implied warranty theory in an action against the manufacturer of a component part. Although *Goldberg* is still good law in New York in strict liability and warranty, Smith v. Squire Homes, Inc., 38 A.D.2d 879, 329 N.Y.S.2d 243 (1973), defendant cites no authority from Texas, California, or anywhere else, directly in accord.

Although California cases cite *Goldberg* they do not cite it for its component parts limitation. Moreover, in Boeing Airplane Co. v. Brown, 291 F.2d 310 (9th Cir. 1961), an action for negligence, it was held that both the manufacturer and the component supplier owe a duty of care to the ultimate user. *Accord,* Ford Motor Co. v. Mathis, 322 F. 2d 267 (5th Cir. 1963). Defendant also cites Courtois v. General Motors Corp., 37 N.J. 525, 182 A.2d 545 (1962), in support of its contention that the *Goldberg* rule is accepted by New Jersey courts. Although there is dicta in *Courtois* that might be construed to lend some support to the *Goldberg* thesis, the New Jersey Supreme Court merely decided, in accordance with the great weight of authority, that General Motors, the assembler, cannot escape liability on an implied warranty by claiming that component parts supplied by others were defective.

Even if it is assumed that Texas, California and New Jersey followed the New York rule, several factual questions still remain unanswered. Are the Superston ingots "component parts" within the *Goldberg* rule? Inquiry into this matter is especially relevant here where defendant alleges that the propellers were designed by an agent of plaintiff and that plaintiff and his designer, in fact, selected the Superston material. If such facts are proved true, plaintiffs claim could well be allowed under the exception to *Goldberg,* applied in cases where the intermediate manufacturer (here Avondale) could not be held liable for the defect. Sevits v. McKiernan-Terry Corp., 264 F.Supp. 810 (S.D.N.Y. 1966). *See also* Sylvestri v. Warner & Swasey Co., 398 F.2d 598, 603 (2d Cir. 1968).

■ Asarco would also have this court dismiss States' claim of express warranty. Although Asarco admits that such a warranty could be extended to plaintiff, notwithstanding lack of privity, by way of advertising relied upon by plaintiff, it denies that plaintiff ever saw its brochures prior to the decision to use Superston. As has already been stated herein, although there is doubt as to whether the decision to use Superston had been made before or after the viewing, if any, of brochures, or whether States relied on any representations

therein, or whether plaintiff even took any part in the decision whatsoever, there is, in any event, a dispute sufficient to avoid summary dismissal of the claim. Every favorable inference that can be drawn from plaintiff's affidavits and other documents must be drawn for purposes of this motion.

Finally, defendant would have this court follow Iowa Electric Light and Power Co. v. Allis-Chalmers Mfg. Co., 360 F.Supp. 25 (S.D.Iowa 1973), rejecting strict liability in cases of equal bargaining power. This decision, however, does not appear to reflect California, Texas or New Jersey law, *see* Fashion Novelty Co. v. Cocker Machine and Foundry Co., 331 F.Supp. 960 (D.N.J. 1971), Seely v. White Motor Co., *supra* (dissenting opinion), and to that extent does not control here. Defendant Asarco's motion for dismissal of the complaint and crossclaims against it is, therefore, denied.

Submit an appropriate form of order.