**BOONE VALLEY COOPERATIVE PROCESSING ASSOCIATION, EAGLE GROVE, IOWA, Plaintiff,**

v.

**The FRENCH OIL MILL MACHINERY COMPANY, a foreign corporation, Defendant.**

Civ. No. 71–C–2012–C.

United States District Court,
N. D. Iowa, C. D.
Oct. 10, 1974.

Theodore T. Duffield, F. H. Becker and Gary D. Ordway of Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, Des Moines, Iowa, for plaintiff.

Paul F. Ahlers and Lee W. Rosebrook of Ahlers, Cooney, Dorweiler, Allbee, Haynie & Smith, Herschel G. Langdon and Richard G. Langdon, Des Moines, Iowa, for defendant.

## MEMORANDUM AND ORDER

HANSON, Chief Judge.

This matter is before the Court by way of defendant's Motion for Summary Judgment and Partial Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure. The motion was filed on May 1, 1974. Oral arguments were heard before the Court on July 9, 1974. All post-hearing briefs have been submitted.

Plaintiff, Boone Valley Cooperative Processing Association, is a domestic cooperative association organized under the laws of Iowa. It engages in the business of processing soybeans in Eagle Grove, Iowa. Defendant, The French Oil Mill Machinery Company, is a corporation organized under the laws of Ohio, and having its principal place of business in that state. The amount in controversy exceeds $10,000.00, and this Court has diversity jurisdiction under 28 U.S.C., § 1332.

In July of 1968 plaintiff contracted with defendant for the installation of soybean processing equipment which would substantially increase plaintiff's then existing processing capacity. The defendant sold, delivered and supervised the installation of certain machinery pursuant to the parties' agreement. On or about December 17, 1969 an explosion occurred at plaintiff's plant. This explosion damaged the plant and plaintiff's equipment, and rendered the plant inoperable for a period of time.

As a result of the explosion, plaintiff filed suit seeking $6,483,826.56 in damages: $950,000.00 for property damage

to the plant and equipment, $33,826.56 for damage to and destruction of certain stock and inventory, and $5,500,000.00 for business profits lost during the time production was interrupted by the explosion. Defendant has counterclaimed for $133,487.19 which it alleges is due and owing under the contract.

Plaintiff's suit is framed in five divisions. Division I is based on breach of certain sales agreements in the contract, Division II on negligence, Division III on implied warranty, Division IV on strict liability in tort and Division V on "res ipsa loquitor". No issue is raised as to any conflict of laws problems; Iowa law is to govern.

Defendant's summary judgment motion involves three distinct issues. The first is whether the plaintiff is barred as a matter of law from asserting all of its claims by virtue of a provision in the contract which purports to waive certain buyer's rights if it defaults on a "due" payment. As to this ground for summary judgment, defendant asserts that if it prevails, plaintiff's entire case must be dismissed.

Defendant's second ground for summary judgment would eliminate a substantial part of plaintiff's damage claims. Specifically, defendant alleges that plaintiff is not entitled to recovery for any lost business profits because of the following contractual provision:

The seller shall not be held liable under this contract for any special, ordered, or consequential damages whatsoever.

In connection with this contractual limitation of remedy argument, defendant raises a real party in interest question as to plaintiff's ability to recover lost business profits. Specifically, defendant contends that the cooperative association is not the real party in interest—its members are. The cooperative, as a nonprofit entity, has no "profits" to recover. A ruling for the defendant on either theory as to this ground for summary judgment would eliminate the

$5,500,000 lost profits claim from plaintiff's possible recovery.

As a third basis for summary judgment, defendant contends that it is entitled to a judgment for $119,003.65 on its counterclaim. The defendant alleges that this amount is undisputed and that it is due and owing under the contract.

Defendant's three grounds for summary judgment will be discussed in the order in which they were presented to the Court.

## I. FULL SUMMARY JUDGMENT AS A RESULT OF THE CONTRACTUAL WAIVER.

The defendant, French Oil Mill, is seeking to dismiss the plaintiff's entire claim on the basis of the following contractual language:

It is mutually agreed that, in default of any payment under the terms and conditions outlined in this contract, with 30 days after such payment is due, the buyer waives any and all rights in said machinery due to prior payments made or otherwise, and waives any and all claims for damages of whatsoever kind or nature, and agrees to load and/or authorizes the seller to enter property where situated and to load said machinery covered by this contract in good condition on cars at the expense of the buyer, and ship as per instructions to be given by the French Oil Mill Machinery Co., Piqua, Ohio, without any objection or litigation from the buyer.

The defendant maintains that plaintiff has waived all claims for damages by defaulting on payments which were due under the contract.

In order to grant any motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, this Court must determine that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Because certain material facts are clearly

in issue as it relates to this particular waiver provision, defendant's motion for a full summary judgment must be denied.

The face of the contract reveals that the waiver defendant seeks to invoke is triggered by a default on a payment which is *due*. Pursuant to the parties' agreement, a "start-up" of the plant and "operation conforming to guarantees" were required to make the final 10 percent of the contract price "due".[1] It is apparent from the pleadings and oral argument in this case that a factual dispute exists as to whether the conditions precedent of start-up and conformance to guarantees were satisfied. While defendant contends that there can be no question as to "start-up" because the plant was in operation both before and after the explosion, this assertion is not conclusive, for it is clear that the plant was to be in partial operation while the new equipment was being installed. Thus, "start-up" must refer to something other than the simple fact that the plant has a daily output, and at this point in the litigation factual issues exist as to what the concept actually entails.

Considering the aspect of conformance with the contractual guarantees, the contract specified that the defendant was to increase plaintiff's processing output from 400 tons per day to 1500 tons per day. The facts of the case indicate that at the time of the December 1969 explosion the plant had an output of approximately 700 tons per day. While the 1500-ton goal was reached on at least some days in May of 1971, that goal was not achieved in the form of average output until October of 1971. The facts are undisputed that

conformance was not reached prior to the explosion; further, it is not clear whether the eventual compliance with the output guarantee was achieved through the efforts of the defendant alone, or with the help of the plaintiff. In any event, factual issues exist as to compliance with the conditions precedent and hence defendant's motion for summary judgment based on plaintiff's waiver of damages under the contract must be denied.[2]

## II. PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF'S CONSEQUENTIAL DAMAGES

In addition to asserting that the plaintiff has waived all of his claims under the contract, the defendant asserts that the plaintiff is foreclosed under the contract from recovering for any losses in the nature of consequential damages. Because consequential damage recovery in a situation such as this one will vary depending upon whether a contract or tort theory is being asserted, defendant's claims in this regard will be discussed as they relate to the particular Divisions of plaintiff's Complaint.

Before considering the effect of a consequential damages limitation on each of the theories of recovery, however, two preliminary matters must be dealt with: (1) whether plaintiff's alleged lost profits fall within the concept of consequential damages, and (2) whether the plaintiff is the real party in interest to recover for the loss at issue.

Condition number seven of plaintiff's contract states:

The seller shall not be held liable under this contract for any special, ordered, or consequential damages whatsoever.

---

1. The Record reveals that pursuant to the contract, plaintiff had paid $1,055,300.00 on the contract price. It was withholding the final 10 percent, $126,700.00, until "after start-up of the plant and operation conforming to guarantees".

2. While superfluous to the disposition of this portion of the motion, there appears to be

one further factual matter in dispute— whether the *defendant* has waived its ability to enforce the contractual provision at issue here. *See* Affidavit of Keith M. Voigt in support of Plaintiff's Resistance to Defendant's Motions for Summary Judgment and Partial Summary Judgment.

The great bulk of damages sought by the plaintiff in this case ($5,500,000.00) is for "lost business and profits" as a result of the explosion and the disruption of plant operations. To avoid the effects of the consequential damages clause, the plaintiff has asserted that it did not intend that loss of profits be included as consequential damages.

In order to reach the question of plaintiff's intention as to a particular contract term, the Court must first determine that the term in issue is so ambiguous as to require interpretation. As acknowledged by the plaintiff (*See* Plaintiff's Brief in Resistance to Defendant's Motion for Summary Judgment), the Iowa Uniform Commercial Code provides a statutory definition of consequential damages:

> . . . any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know.
> . . . Section 554.2715, Code of Iowa (1973).

■ Loss of profits in a manufacturing context similar to the processing operations of plaintiff, Boone Valley, seems to directly fit this statutory definition, and has been recognized to be consequential damages by the Eighth Circuit Court of Appeals in just such a situation. *See* Lewis v. Mobil Oil Corporation, 438 F.2d 500, 510–512 (8th Cir. 1971). As stated by that court:

> Where a seller provides goods to a manufacturing enterprise with knowledge that they are to be used in the manufacturing process, it is reasonable to assume that he should know that defective goods will cause a disruption of production, and loss of profits is a natural consequence of such disruption.

438 F.2d at 510. *See also* Hales v. Green Colonial, Inc., 490 F.2d 1015, 1021 (8th Cir. 1974); White & Summers, Uniform Commercial Code, 318–321 (1972). The Eighth Circuit in *Lewis* was construing the Arkansas Uniform Commercial Code Section on consequential damages—a section identical to Iowa's. Given the facts of this case, the lost profits sought by the plaintiff clearly fall within the purview of consequential damages.

The defendant raises one further preliminary question to the loss of profits issue: whether the plaintiff, as a nonprofit cooperative, is the real party in interest to assert this claim. Defendant's position is based on its view of cooperatives as mere conduits for the income of its members. It relies heavily on cases in the income tax area which have recognized the "economic reality" that a "cooperative's activity does not result in income to the cooperative, but that income generated by such activity rightfully belongs to the member-patrons".

It appears to this Court that a distinction should be made between where any lost profits will eventually end up—with members—and who can assert a legal claim for their loss.

Cooperative associations are governed by the Iowa Code. Section 499.7(7) of the Code allows cooperatives "to exercise any power, right or privilege suitable or necessary for, or incident to, promoting or accomplishing any of its powers, purposes or activities, or granted to ordinary corporations, save such as are inconsistent with this chapter." Section 496A.4(2) grants a corporation the power to "sue and . . . complain . . . in its corporate name". This power appears to be within Section 499.-7(7), and not inconsistent with Chapter 499. Being an entity allowed by law to enter into contracts, it would seem unduly harsh to deny a cooperative the ability to go to court to enforce rights under that contract merely because any eventual recovery will be funneled to members. Under the Iowa Code, earnings of a cooperative must be distributed for certain cooperative purposes before the residue can be dispensed to members. 499.30, Code of Iowa (1973). Under the defendant's theory, there

would be no way to recover the amounts which would go to a cooperative—each member could only claim as to *his* lost earnings.

In addition to numerous income tax cases, the defendant's position relies heavily on an Eighth Circuit antitrust decision, Farmers Co-op Oil Co. v. Socony Vacuum Oil Co., 133 F.2d 101 (8th Cir. 1942). While that case clearly denied a cooperative the right to assert "causes of action owned individually by its stockholders or members" under the Clayton Act, its applicability to the contract setting of this case is questionable. Indeed, even in the antitrust area, a cooperative has been allowed to sue in its own name. In American Cooperative Serum Ass'n. v. Anchor Serum Co., 153 F.2d 907 (7th Cir. 1946), the court stated:

> Defendants further urge that the court erred in rejecting their plea that plaintiff cannot maintain this action because it is one to be asserted by plaintiff's members rather than by itself, because, as they say, any amount recovered in such action would not be the property of plaintiff but of its members. We think the court did not err in this respect. It seems clear that the amount recoverable in this action, if any, would have been in the first instance the property of the corporate entity, would have belonged to its treasury, and would have been subject to its corporate purposes and available for the payment of its. creditors, if any; and that the individual members would acquire no right or interest therein until in due course the action of plaintiff's board of directors had fixed the amount of the patronage dividend and there had been a separation of funds from the corporate treasury. The plaintiff is a corporate entity and we find no authority which prevents it from suing in its name on its contracts or for a violation thereof, notwithstanding the fact that a portion of the amount recovered, if any,

would eventually go to and belong to its members.

153 F.2d at 912–913.

To bolster its real party in interest argument, defendant maintains that a "double recovery" will result if the cooperative prevails. Specifically, it is asserted that the members of the cooperative marketed their beans through other channels while Boone Valley was inoperative. Thus, in reality, no profits have been lost. It is the conclusion of this Court that the defendant's arguments challenging the plaintiff's capacity to sue and asserting that a "double recovery" will accrue to members who had other channels through which to market their beans during the cooperative's inactivity are misdirected. Rather than being determinative of whether the cooperative is the proper party to sue, these arguments go more to the issue of *how much the cooperative can recover* by way of lost profits. Members of the Boone Valley Cooperative truly have an equally profitable alternative available for marketing their beans, there would seem to be no reason for Boone Valley's existence. In proving lost profits, the Court assumes that the defendant will attempt to minimize the plaintiff's loss by asserting that its members had alternative avenues in which to market their beans, and have lost no money. To do so might reduce any lost profit claims, but it does not preclude the plaintiff from alleging those losses in the first instance. Hence, this plaintiff is the proper party to assert lost profits arising out of the contract with the French Oil Mill. It must now be determined whether the contractual provision pertaining to consequential damages excludes lost profits, if any, from plaintiff's possible recovery.

## CONTRACT CLAIMS

Divisions I and III of plaintiff's complaint are based, respectively, on breach of the sale agreement between plaintiff and defendant,[3] and breach of implied

---

3. As to Division I, plaintiff has asserted that defendant's breach of the sale agreement was a negligent breach, and hence the division states a tort action of negligence. The

warranty. The issue before the Court is whether the plaintiff is precluded from seeking lost profits under either of these causes of action because of the contractual exclusion of consequential damages from plaintiff's recovery.

It is beyond dispute that the parties to a contract can agree to exclude consequential damages from one party's possible recovery upon a breach of that contract. Such a limitation of remedy is expressly authorized by the Uniform Commercial Code:

> Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima-facie unconscionable but limitation of damages where the loss is commercial is not.

Section 554.2719(3), Code of Iowa (1973).

■ Condition 7 of plaintiff's contract is thus an authorized allocation of the risk of consequential damages to the plaintiff. Plaintiff has endeavored to avoid the effect of the contractual clause by asserting that the clause is not "conspicuous," and hence is unenforceable. The Court must agree with defendant's statutory argument in this regard: the "conspicuous" requirement of Section 554.2316(2) goes only to disclaimers of warranties, and not to limitations of remedies. As a limitation on plaintiff's remedies, "Condition 7th" must merely be "conscionable," not "conspicuous". *See* Cryogenic Equipment, Inc., v. Southern Nitrogen, Inc., 490 F.2d 696

(8th Cir. 1974); White & Summers, Uniform Commercial Code, 383–386 (1972).

■ A review of the salient facts in this regard reveals that Condition 7 cannot be stricken as unconscionable. First, this contract was entered into in a commercial setting by parties of equal bargaining power. Second, there is a total lack of the type of oppression or unfair surprise which typifies findings of unconscionability in the consumer sphere. *See* White & Summers, *supra*, 114–118. These parties had been engaged in business endeavors for over twenty years, and "Condition 7th" had often been a part of prior agreements. Given these undisputed facts, the Court cannot strike this condition as unconscionable, and thus it is an enforceable limitation on the remedies available to the plaintiff under its contract theories.[4]

## TORT CLAIMS

While the plaintiff is precluded from asserting claims for lost profits under its contract theories, the question of whether these claims can be asserted under the negligence or strict liability counts remains.[5]

It is the claim of the French Oil Mill that the plaintiff has contractually waived any right to assert consequential damages in a negligence action. The agreement in question is thirteen pages long, with the first twelve pages dealing with various specifications of the processing equipment. The last page of the contract is in smaller print than the foregoing pages and appears to be a form supplied by the defendant. It

Court feels that Division I is more properly grounded in contract than in tort, for its essence is breach of certain contractual duties. Moreover, this characterization does not appear to be prejudicial to the plaintiff, for the negligence particulars raised in Division III are as extensive as the particulars asserted in Division I.

4. It is well settled that the question of unconscionability is one of law, and thus is properly before the Court by way of the defendant's summary judgment motion. See County Asphalt, Inc. v. Lewis Welding &

Engineering Corp. 323 F.Supp. 1300, 1308–1309 (S.D.N.Y.1970), affd. 444 F.2d 372, 378–379 (2d Cir. 1971).

5. Division V of plaintiff's complaint alleges a cause of action under res ipsa loquitur. Under Iowa law, res ipsa loquitur is an evidentiary tool which can supply an inference of negligence from certain established facts. Thus, for purposes of this motion, Division V can be considered as merely a portion of plaintiff's negligence count. *See* Boyer v. Iowa High School Athletic Assn., 260 Iowa 1061, 152 N.W.2d 293 (1967).

deals with the following items: "Price," "Terms," "Guaranty," "Conditions," and "Shipment". The consequential damage limitation is the seventh enumerated "condition". As previously explained, the seller is relieved of liability for consequential damages "under this contract". A "guaranty" appears just above the conditions. It states:

> For one year from date of shipment or six months from date of starting and under normal use and service, the seller guarantees against breakage, due to hidden defects, all the machinery of its own manufacture covered by this contract. New parts will be furnished to replace such defective parts free of charge, f. o. b. cars Piqua, Ohio, or factory, if requested by seller.

The French Oil Mill relies heavily on the case of Fire Ass'n of Philadelphia v. Allis-Chalmers Mfg. Co., 129 F.Supp. 335 (N.D.Iowa 1955) for the proposition that when a party is precluded under a contract from asserting a particular claim it cannot simply phrase the same cause of action in negligence terms and thereby avoid remedy limitations in the contract. This Court, in the recent case of Iowa Electric Light & Power Co. v. Allis-Chalmers Mfg. Co., 360 F.Supp. 25 (S.D.Iowa 1973) endorsed the views expressed by Judge Graven in the *Fire Association* case. These two cases, however, do not fully resolve the negligence claims in issue here. The situation confronting Judge Graven in *Fire Association* was one where the "omission by one of the parties is a breach of contract and *because of the contract* also a tort as to the other party". 129 F.Supp. at 349 (Emphasis added). In this case, one of the particulars of plaintiff's negligence count is based on a safety regulation of the Iowa Safety Code Rules and Regulations, Section 88.9. Thus, at least this particular of negligence may be one which arises independently of the contractual duty, and hence could fall outside the scope of *Fire Association*.

The Court's conclusion in this regard is buttressed by the fact that the contract language in issue merely purports to waive defendant's liability "under this contract" for consequential damages. This language would seem to preclude negligence actions which are premised solely on *contractual duties*, while leaving others extant, because by utilizing the phrase "under this contract" in its consequential damages limitation the defendant has invited the rule of statutory construction that an ambiguous phrase be construed against the drafter. Weik v. Ace Rents, 249 Iowa 510, 87 N. W.2d 314 (1958). The French Oil Mill has been dealing with this plaintiff for over twenty years. If it wanted the exclusion of consequential damages to apply to independent tort actions, it simply could have said so. *Cf.* Northern Natural Gas Co. v. Roth Packing Co., 323 F. 2d 922 (8th Cir. 1963). A comparison of the language used here to the terminology used in the agreements of similar cases bears out this assertion. The contract in Iowa Electric Light & Power Co. v. Allis-Chalmers Mfg. Co., *supra*, excluded the drafter's liability for consequential damages *"in any event,"* 360 F. Supp. at 33, and referred directly to liability in contract *or tort*. In *Fire Association, supra*, the contract similarly excluded damages *"in any event"*. 129 F. Supp. at 343. The plaintiff in *Weik* agreed to "save harmless the company from all claims or liabilities to all parties for damage or loss to any person . . . " 87 N.W.2d at 316.

While the contract in the instant case does contain the language "without further liability" in a guaranty referring to the replacement of defective parts, this Court feels compelled to follow the Iowa rule that

> contract provisions that are subject to construction, which a party claims relieve him from liability for his own negligence, particularly active negligence, are strictly construed against him. They are not held to cover such negligence unless the intention to do so is clearly expressed.

Sears, Roebuck and Co. v. Poling, 248 Iowa 582, 81 N.W.2d 462 (1957), *See*

*also* Chicago Great Western Ry. Co. v. Farmers Produce Co., 164 F.Supp. 532 (N.D.Iowa 1958).

■ In sum, the contractual language utilized by the defendant, French Oil Mill, cannot be viewed as foreclosing all of the plaintiff's tort claims as a matter of law. Applying the Iowa law as enunciated by Judge Graven in *Fire Association of Philadelphia*, those negligence claims which are based on contractual duties are not available to allow recovery of consequential damages. This finding does not foreclose the plaintiff from attempting to present facts which may establish a particular of negligence based on a statutory duty arising independently of the contract. Summary judgment is therefore appropriate as to those negligence claims based on contractual duties, but not those which may be based on an independent duty.

■ The final matter to be determined as it relates to consequential damages is whether such a recovery is available to this plaintiff under the theory of strict liability in tort. This Court, in *Iowa Electric Light & Power Co. v. Allis-Chalmers Mfg. Co., supra*, held that strict liability recovery was not available to a commercial plaintiff who had dealt at arms length with a commercial defendant, and was "suing *solely* for commercial loss." 360 F.Supp. at 32. (Emphasis added.) Here the plaintiff is suing for more than the "loss of its bargain;" an explosion occurred at the plant, causing property damage and disruption to plaintiff's operation. Hence, this case is factually distinguishable from *Iowa Electric*, a case in which no physical damage occurred other than to the product itself—the transformer involved merely ceased to function.[6] 360 F.Supp. at 27. The Court believes this distinction to be an important one in light of recent cases in this rather unsettled area of the law,[7] and cannot accept defendant's contention that *Iowa Electric* must control the result here.

The recent Eighth Circuit Court of Appeals case of Hales v. Green Colonial, Inc., 490 F.2d 1015 (8th Cir. 1974), is directly relevant to analysis of the instant case. The court in *Hales*, applying Missouri law,[8] allowed recovery of consequential damages in the form of lost business profits where a defective heater caused plaintiff's store to burn, interrupting business for eight months. 490 F.2d at 1022. In allowing this recovery, the court was careful to distinguish *Hales* from cases where lost profits are claimed solely because the malfunctioning of a defective product reduces a plaintiff's profit-making ability. In

6. The Court notes that its opinion in *Iowa Electric* has been read by at least one court as holding that Section 402A is not available *at all* to a plaintiff who is of equal bargaining power with its defendant. *See* States Steamship Co. v. Stone Manganese Marine, Ltd., 371 F.Supp. 500, 507 (D.N.J.1973). While some language in *Iowa Electric* may lend itself to that conclusion, *Iowa Electric* merely held that Section 402A was not available to a corporate plaintiff seeking to recover solely for economic loss. Construing dictum in that case to assert that a commercial plaintiff is ineligible *per se* to assert a theory of strict liability gives the case too broad a sweep. This Court fails to see how a line could be drawn based on a party's size which would control that party's ability to assert a theory of recovery. The proper inquiry in a situation such as the instant case must focus upon whether the plaintiff can establish that a defect existed in the product "when it left the plant." *See* Hales v.

Green Colonial, Inc., 490 F.2d 1015, 1023 (8th Cir. 1974) (Bright, J., dissenting). Such an approach avoids creating rigid categories in this area, stressing instead whether the plaintiff had any control over the situation which it asserts is "unreasonably dangerous."

7. While the Court must apply Iowa law in this diversity action, it appears that the Iowa Supreme Court has yet to deal with the parameters of Section 402A outside the context of a consumer setting. That Section 402A of the Restatement (Second) of Torts is the law in Iowa has been reaffirmed in Kleve v. General Motors Corporation, 210 N.W.2d 568 (Iowa 1973).

8. Missouri, like Iowa, has adopted Section 402A of the Restatement (Second) of Torts (1965). *See* Keener v. Dayton Electric Mfg. Co., 445 S.W.2d 362 (Mo.1969), cited at 490 F.2d at 1019.

other words, the court enunciated the very distinction which exists between *Iowa Electric* and the instant case. In *Iowa Electric,* a transformer simply broke down with no separate tortious harm resulting to the plaintiff. Here it is alleged that defects in the soybean processing equipment sold by the defendant caused an explosion resulting in substantial physical damage to plaintiff's plant and inventory. Given this distinction, this Court follows the view expressed in *Hales* by Judge Lay that "loss of profits by reason of the tortious destruction of the plaintiffs' business was a foreseeable damage ordinarily cognizable in tort liability . . . " 490 F.2d at 1022. Thus, it is the holding of this Court that this plaintiff should not be foreclosed as a matter of law from asserting claims for lost profits by way of strict liability should the facts justify submitting a strict liability theory to the jury.

This conclusion in no way contradicts this Court's holding in *Iowa Electric.* That decision was influenced greatly by the California case of Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). As quoted in *Iowa Electric, Seely* expressly recognized that a manufacturer

> cannot be held for the level of performance of his products in the consumer's business *unless he agrees* that the product was designed to meet the consumer's demands . . .

> (A consumer) can . . . be fairly charged with the risk that the product will not match his economic expectations *unless the manufacturer agrees that it will.*

360 F.Supp. at 31 (Emphasis added).

This case presents a privity situation where the facts may or may not show that the seller could reasonably have foreseen the possible harm which would result from an explosion such as the one involved here. Without expressing any opinion as to the evidence, given the fact that the situation here involves more than a mere "loss of the bargain," under *Hales* the plaintiff is not foreclosed from asserting consequential damages claims under a strict liability count.[9]

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON ITS COUNTERCLAIM

The defendant has filed a counterclaim in this action for $133,487.19, which it alleges is due and owing under the contract. For purposes of this motion, that amount has been reduced to $119,003.65 which is alleged to be undisputed as well as due and owing.

It is clear to this Court that defendant's motion is predicated upon the contract price being *due*—a factual issue still in dispute. *See* Section I, *supra.* Thus, summary judgment as to this counterclaim must be denied.

Accordingly, it is ordered that:

Defendant's Motion for Summary Judgment as to plaintiff's waiver of all claims under the contract be denied;

Defendant's Motion for Summary Judgment as to plaintiff's ability to sue for consequential damages under its contractual and tort theories be granted, except as to any negligence theories based on duties arising independently of the contract, and as to plaintiff's strict liability claim;

Defendant's Motion for Summary Judgment as to its counterclaim be denied.

It is so ordered.

---

9. *Cf.* Fredonia Broadcasting Corp., Inc. v. RCA Corp., 481 F.2d 781, 797 (5th Cir. 1973). In *Fredonia,* strict liability was held not available under Texas law where the buyer suffered *only* economic loss, without accompanying personal or property damage. *See also* States Steamship Co. v. Stone Manganese Marine, Ltd., 371 F.Supp. 500, 504–505 (D.N.J.1973).